UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TAMMY LIVINGSTON, individually and as Co-Beneficiary and Co-Trustee of the Livingston Music Interest Trust,<br><br>Plaintiff,<br><br>v.<br><br>JAY LIVINGSTON MUSIC, INC., et al.,<br><br>Defendants. | Case No. 3:21-cv-00780<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

In this action, Plaintiff Tammy Livingston brings claims against Defendant Jay Livingston Music, Inc., Randy Talmadge, and Travilyn Livingston (collectively, Defendants) to enforce the terms of trusts and estate planning documents related to the songwriting catalog of Jay Livingston (Doc. No. 24). Defendants have filed a motion to dismiss Plaintiff's amended complaint (Doc. No. 28) on grounds that its claims are subject to arbitration by virtue of an arbitration clause contained in contracts between Jay Livingston and Jay Livingston Music, Inc. Plaintiff has moved to conduct limited discovery related to the existence of the arbitration agreements that are the basis for Defendants' motion. (Doc. No. 34.) Defendants oppose the requested discovery. (Doc. No. 37.) Plaintiff has replied in support of her motion. (Doc. No. 38.) For the reasons that follow, Plaintiff's motion for limited discovery will be granted in part and denied in part as defined by this Order and Defendants' motion to dismiss will be administratively terminated without prejudice to refiling.

**I.      Background**

Plaintiff alleges that "[s]ongwriter royalties are typically paid by a music publisher who will acquire the control or ownership of a song through a license or transfer of a copyright from

the songwriter, often referred to as a 'songwriter contract'." (Doc. No. 24, ¶ 33.) Plaintiff attributes to Defendants a statement that, "during his life, Jay Livingston executed a Popular Songwriters Agreement for each of his songs. These contracts are based upon forms created and used by the American Guild of Authors and Composers . . . ." (*Id.* at ¶ 34.) These contracts include agreements regarding the distribution of royalties that are the basis of Plaintiff's claims. Defendants assert—and Plaintiff does not dispute—that Paragraph 17 of the form American Guild of Authors & Composers Popular Songwriters Renewal Contract[1] used by Livingston contains an arbitration clause. That clause states, in relevant part: "Any and all differences, disputes or controversies arising out of or in connection with this contract shall be submitted to arbitration before a sole arbitrator under the then prevailing rules of the American Arbitration Association." (Doc. No. 37-1.) Defendants move to dismiss Plaintiff's claims and compel the arbitration of this action pursuant to that clause.

Plaintiff states that her amended complaint "enumerates by reference *at least* 800 songs authored by Jay Livingston that were sub-published (commercially exploited) by Defendants" and that, "[a]ccording to the American Society of Authors and Composers ("ASCAP"), Jay Livingston Music Inc. publishes 917 songs." (Doc. No. 35.) At the time Plaintiff filed her motion for discovery, Defendants had produced songwriter contracts for only four of Jay Livingston's songs. (*Id.*) Defendants have now provided an additional sixteen contracts (Doc. No. 37-1), and Defendants argue that the songs that are the subject of the collective twenty produced contracts "account for approximately 98% of the total income generated by the Jay Livingston compositions

---

[1] Plaintiff states that "the actual name of the contract provided by Defendants is 'Popular Songwriters Renewal Contract.'" (Doc. No. 24, ¶ 33 n.7.) It appears that Defendants have produced multiple Popular Songwriters Renewal Contracts and one Popular Songwriters Contract (Doc. No. 37-1, PageID# 674–77.) Both form documents contain an arbitration clause in their respective Paragraphs 17.

that JLM publishes." (Doc. No. 37.) Defendants have also provided an agreement executed on July 15, 1984, between Travilyn Livingston as the representative of Jay Livingston Music, Inc., and Jay Livingston which states that, "[w]ith respect to each musical composition assigned to Jay Livingston Music by Jay Livingston, the parties shall enter into a separate popular songwriters agreement in the form of the Popular Songwriters Agreement attached hereto . . . ." (Doc. No. 19-1.) Defendants argue that the twenty produced contracts and the July 15, 1984 agreement demonstrate that Jay Livingston and Jay Livingston Music intended any disputes regarding the Jay Livingston song catalog to be resolved in arbitration.

Plaintiff generally disagrees with Defendants' representations as to the number of songs from Jay Livingston's catalog that generate royalties income and the amount in controversy in this action. Plaintiff also argues that it is Defendants' burden "to demonstrate that agreement to arbitrate covering each song at issue in this litigation exists" and that Defendants cannot meet that burden "until factual issues related to how many songs have executed contracts with arbitration agreements exist, and whether they are all the same as Defendants claim . . . ." (Doc. No. 38.) Plaintiff seeks the following discovery to address these issues:

- Not more than 10 interrogatories, 10 requests for production, and/or 10 requests for admissions "limited to issues related to unprovided arbitration agreements and/or music publishing contracts," including "requests for the production of all music publishing agreements regarding any musical composition(s) written by Jay Livingston in whole or in part, including but not limited to those Defendants assert contain an arbitration agreement governing this action . . . .";

- Leave to issue third-party subpoenas limited to topics germane to the issues of the arbitration agreements and/or music publishing contracts which Defendants assert govern this action; and,

- Leave to take the deposition of Randy Talmadge "limited to the issues of the unprovided arbitration agreements and/or music publishing contracts and statements made in Defendants' motion to dismiss and/or exhibits filed in support of the same."

(Doc. No. 34.)

## II. Analysis

"Under the FAA, the party seeking to compel arbitration must first make a prima facie showing of the existence of a valid agreement to arbitrate." *Mitchell v. Cambridge Franchise Holdings, LLC*, 433 F. Supp. 3d 1064, 1068 (W.D. Ky. 2020); *Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 6459642, at *5 (M.D. Tenn. Nov. 3, 2020) ("The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement.") "A party can make its prima facie showing by providing copies of a written, signed agreement to arbitrate." *Mitchell*, 433 F. Supp. 3d at 1068; *see also Hammond*, 2020 WL 6459642, at *13 (finding in FLSA action that, "for those putative employees for whom [the defendant] cannot produce a signed agreement . . . it cannot make a *prima facie* showing of the existence of a binding arbitration agreement"). Once the prima facie burden has been satisfied, the party resisting arbitration "must demonstrate that the validity of the [arbitration agreement] is 'in issue' by showing there is a genuine issue of material fact as to the validity of the [a]greement, a showing that mirrors the summary judgment standard."[2] *Mitchell*, 433 F. Supp. 3d at 1068.

Requests for limited discovery in the context of a motion to compel arbitration are commonly directed at evidence to show that a plaintiff did not enter into an arbitration agreement knowingly or voluntarily. Here, Plaintiff does not appear to contest that the clauses contained in the produced agreements are valid. Instead, she seeks discovery to determine if the same or similar

---

[2] Because the Sixth Circuit applies the summary judgment standard in this context, at least two district courts have required parties to meet the standard of Federal Rule of Civil Procedure 56(d) in a motion for limited arbitration-related discovery. *See Heath v. Virginia Coll., LLC*, No. 3:17-CV-366-HSM-DCP, 2018 WL 5317929, at *5 (E.D. Tenn. July 2, 2018), *report and recommendation adopted,* No. 3:17-CV-366, 2018 WL 4521027 (E.D. Tenn. Sept. 21, 2018); *AT&T Mobility Servs. LLC v. Payne*, No. 3:17-CV-00649-CRS, 2018 WL 476163, at *1 (W.D. Ky. Jan. 18, 2018). The parties have not argued that the Rule 56(d) standard be applied to Plaintiff's motion, and the Court reserves that issue for another day.

agreements were made for all of the songs that are the subject of her claims. To that end, Plaintiff asks for "limited discovery . . . to determine factual issues related to the existence, nature, and scope of the arbitration agreements and/or contracts upon which defendant's [sic] motion to dismiss is premised." (Doc. No. 35.) Plaintiff states that Defendants "have failed to provide and/or account for, *at a minimum*, five-hundred and forty-nine (549) separate, single-song, music publishing contracts, containing alleged arbitration agreements, upon which Defendants' motion to dismiss relies (or any other contract(s) having an arbitration agreement(s), with respect to any or all of such Songs)." (*Id.*)

Defendants argue that, "before discovery can be justified, [Plaintiff] must have some basis for claiming the validity of the arbitration clause is legitimately 'at issue' under the Federal Arbitration Act" and that Plaintiff has not made that showing here because the limited production they have already made adequately establishes that Jay Livingston and Jay Livingston Music intended to enter into arbitration agreements for all of the songs at issue. (Doc. No. 37.) Defendants also argue that production of the additional songwriter contracts—which are in the custody of Defendants Randy Talmadge and Travilyn Livingston at their home and in storage—would be overly burdensome and that its cost would exceed the value of Plaintiff's claims. (*Id.*) The remainder of Defendants' arguments address the merits of Plaintiffs' claims and are not appropriately resolved in the context of this motion.

If Defendants intend to argue that all of Plaintiffs' claims are subject to arbitration, it is not an undue burden to require that Defendants produce all of the subject arbitration agreements. Plaintiff's motion to conduct limited discovery related to those agreements will be granted. However, the Court will limit the scope of that discovery to address only the existence of the arbitration agreements.

## III. Conclusion

Plaintiff's motion for leave to conduct limited discovery (Doc. No. 34) is GRANTED as follows:

Plaintiff may serve no more than five interrogatories, five requests for production, and/or five requests for admissions on Defendants. This discovery shall address only the existence of arbitration clauses in unproduced songwriter contracts or other agreements that are the subject of Plaintiffs' claims and which Defendants assert include valid arbitration agreements.

Plaintiff shall serve her limited discovery requests no later than seven days after the date of this Order. Defendants shall have thirty days to respond.

In consultation with Chief Judge Crenshaw, Defendants' motion to dismiss (Doc. No. 28) is TERMINATED without prejudice to refiling after the subject discovery has been produced and the parties have met and conferred regarding arbitration.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge