UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TAMMY LIVINGSTON, individually and as Beneficiary and Co-Trustee of the Livingston Music Interest Trust,** ) ) ) ) | |
| **Plaintiff,** ) | |
| **v.** ) | **NO. 3:21-cv-00780** |
| **JAY LIVINGSTON MUSIC, INC., RANDY TALMADGE, individually and TRAVILYN LIVINGSTON, as Co-Trustee of the Livingston Music Interest Trust,** ) ) ) ) ) ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

This is a dispute between the heirs of Jay Livingston ("Jay") arising from agreements that contain arbitration clauses. Before the Court is Jay Livingston Music, Inc. ("JLM"), Randy Talmadge, and Travilyn Livingston's ("Defendants") Renewed Motion to Dismiss (Doc. No. 58 and 62), opposed by Tammy Livingston ("Tammy"). (Doc. No. 61).[1] Because Tammy's claims are subject to binding arbitration clauses, Defendants' Motion (Doc. No. 58) will be granted.

---

[1] Tammy's Motion for Leave to File Sur-Reply Brief in Opposition (Doc. No. 63), which Defendants oppose (Doc. No. 64), will be granted.

## I. FACTUAL BACKGROUND[2]

Jay was a popular songwriter whose music has been featured on television and in movies. (See Doc. No. 24 ¶¶ 9, 26). Tammy, Jay's granddaughter, alleges that her rights to Jay's music have been harmed by the tortious actions of her mother Travilyn Livingston, stepfather Randy Talmadge, and the publishing company owned and operated by both, JLM. (Doc. No. 24 ¶¶ 1–4, 39, 51–79).

Since the 1980s, Jay received royalty payments from JLM's publication of songs pursuant to copyright agreements. (See id. ¶¶ 33–37 (citing Doc. No. 19-1)). Copyright interests in over 800 songs were assigned to JLM, and "[w]ith respect to each musical composition assigned . . . writer royalties [are] paid solely in accordance with the terms and conditions of [Popular Songwriters Agreements]." (Id. ¶ 38; Doc. No. 19-1 at 5). Each Popular Songwriters Agreement ("PSA") includes identical language requiring the arbitration of disputes:

> Any and all differences, disputes or controversies arising out of or in connection with this contract shall be submitted to arbitration before a sole arbitrator under the then prevailing rules of the American Arbitration Association. The location of the arbitration shall be New York, New York, if the Writer on the date of execution of this contract resides East of the Mississippi River, or Los Angeles, California, if the Writer on the date of execution of this contract resides West of the Mississippi River. The parties hereby individually and jointly agree to abide by and perform any award rendered in such arbitration. Judgment upon any such award rendered may be entered in any court having jurisdiction thereof.

(e.g., Doc. No. 19-1 at 12, 17) (emphasis added). The PSAs also require JLM to provide an accounting of royalties owed and to produce royalty statements. (See, e.g., Doc. No. 19-1 at 16). The royalty rights and obligations owed to Jay were passed on to his heirs, including Tammy.

---

[2] The facts are drawn from the Amended Complaint (Doc. No. 24) that cites and relies upon the Declaration of Randy Talmadge (Doc. No. 19-1), (see Doc. No. 24 ¶¶ 34–35 (citing Doc. No. 19-1), 61–63, 67, 69–71), which is incorporated by operation of Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere . . . in any other pleading . . . .").

(Doc. No. 24 ¶ 35; <u>see</u> Doc. 24-3 at 7, 50 (granting Tammy a share of Jay's music interests consisting of "royalties from . . . music publishers, record companies, motion pictures, stage productions, television programs, etc. and from all contracts pertaining thereto"); <u>see, e.g.</u>, Doc. No. 19-1 at 17 ("Whenever the term 'Writer' is used herein . . . it shall be deemed to mean . . . authors and composers of said compositions or their respective lawful successors . . . .")).

Tammy alleges that the Defendants have failed to provide detailed royalty statements, misrepresented royalty collections, failed to pay royalties owed, induced contractual breaches, and unlawfully terminated copyrights for songs. (Doc. No. 24 ¶¶ 51–79). These acts form the basis of her tortious interference, misrepresentation, accounting, civil conspiracy, negligence, breach of fiduciary duty, and unjust enrichment causes of action. (<u>Id.</u> ¶¶ 80–145). The Amended Complaint is silent on the arbitration clauses in the PSAs. (<u>See generally</u> Doc. No. 24).

## II.    LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, when a valid agreement to arbitrate exists, the district court must stay or dismiss proceedings until the completion of arbitration. <u>Glazer v. Lehman Bros., Inc.</u>, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). The FAA requires that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This reflects the "liberal federal policy favoring arbitration." <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 339 (2011) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 245 (1983)); <u>see O.J. Distrib., Inc. v. Hornell Brewing Co.</u>, 340 F.3d 345, 356 (6th Cir. 2003); <u>Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 205 F.3d 906, 911 (6th Cir. 2000).

3

The primary focus is "whether the parties agreed to arbitrate the dispute at issue." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000). To answer this question, courts evaluate: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) whether Congress intended any federal statutory claims at issue to be non-arbitrable; and (4) whether to stay proceedings for any remaining claims not subject to arbitration, if applicable. Id. To do so the courts "examine the language of the contract in light of the strong federal policy in favor of arbitration" and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." Id.

Matters concerning the validity of arbitration clauses and contract formation are properly adjudicated before federal courts. Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 296–97 (2010) ("It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide. . . . [C]ourt[s] must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."); Taylor v. Pilot Corp., 955 F.3d 572, 576 (6th Cir. 2020). However, the validity of a contract "as a whole" is reserved for arbitration. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. . . . [And t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."); Glazer, 394 F.3d at 452 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402–04 (1967)) (distinguishing challenges to the validity of a contract as a whole, which are "matter[s] to be resolved by the arbitrators, not the federal courts[,]" and challenges to the validity of an arbitration agreement, which "federal court[s] may adjudicate . . . .").

In deciding matters before the Court, the FAA instructs application of state contract law. See 9 U.S.C. § 2; Glazer, 394 F.3d at 451 ("State contract law . . . governs in determining whether the arbitration clause itself was validly obtained."); see also Anderson v. Amazon.com, Inc., 490 F. Supp. 3d 1265, 1271 (M.D. Tenn. 2020) (citing Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 972 (6th Cir. 2007)) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."). "Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." Cooper v. MRM Inv. Co., 367 F.3d 493, 498 (6th Cir. 2004).

"[T]he party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. . . . [M]irror[ing] that required to withstand summary judgment in a civil suit." Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). "Given the directives of the Supreme Court and [Sixth] Circuit, . . . district court[s are] required to give a general presumption of arbitrability and to resolve any doubts in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Watson Wyatt & Co. v. SBC Holdings, Inc., 513 F.3d 646, 649 (6th Cir. 2008) (quoting Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004)).

## III. DISCUSSION

### a. The Parties Agreed to Arbitrate

Tammy's claims must be arbitrated pursuant to the arbitration clauses in the PSAs. Defendants demand arbitration based upon the clear language of the PSAs and a "General Assignment of Copyright" ("General Assignment"), that includes Tammy's claims arising from Jay's songs. (See Doc. No. 59 at 8–12; Doc. Nos. 59-1–59-18). Tammy acknowledges the

5

arbitration clauses and concedes the breadth of their scope but argues that there is a genuine question of fact as to the authenticity of the PSAs. (Doc. No. 61 at 5 (quoting Fed. R. Evid. 1003)). As a matter of law, Tammy's arguments must be rejected.

First, Tammy directly contradicts her Amended Complaint. The Amended Complaint incorporates the PSAs included within Randy Talmages' Declaration, (Doc. No. 24 ¶¶ 34–35, 61–63, 67, 69–71), and Tammy asserts rights that are the product of these very same PSAs. (Id. ¶ 36). Without the existence of PSAs, neither Jay, nor his "heir" and "successor" Tammy, are owed royalties, royalty statements, or other duties from JLM. (Id. ¶¶ 33–35, 61–63; Doc. No. 19-1 at 14–17). Nonetheless, Tammy alleges that several PSAs are inauthentic, (Doc. No. 61 at 5–12), *including* those incorporated within her Amended Complaint. (Id. at 6 (citing Doc. No. 19-1)).

Tammy's assertion that the PSAs are not authentic is not well taken. "Plaintiffs are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit." Hughes v. Vanderbilt Univ., 215 F.3d 543, 549 (6th Cir. 2000); see Miller v. Drug Enf't Admin., 566 F. App'x 395, 397 (6th Cir. 2014) ("Plaintiff is bound by the factual allegations in the complaint."). Allegations from a plaintiff that contradict the complaint are routinely disregarded. See, e.g., Alexander v. Byrd, No. 14-1022-STA-EGB, 2017 WL 2684091, at *7 (W.D. Tenn. June 21, 2017), aff'd sub nom. Alexander v. Carter for Byrd, 733 F. App'x 256 (6th Cir. 2018) (disregarding a plaintiff's declaration that contradicted her original complaint); Marsh v. ProNova Sols., LLC, No. 3:20-CV-393, 2021 WL 1258585, at *1 (E.D. Tenn. Mar. 11, 2021) (denying plaintiffs argument in opposition to defendants' motion to dismiss that "clearly contradict[ed] their own complaint"); Williams v. Pat Salmon & Sons, Inc., No. 07-2432, 2011 WL 830384, at *7 (W.D. Tenn. Mar. 3, 2011) ("[Plaintiff] cannot create question of fact by denying facts admitted in her Complaint."); see also Milbourne v. JRK Residential Am., LLC, No.

6

3:12CV861, 2016 WL 1070818, at *5 (E.D. Va. Mar. 15, 2016) (quoting Kaur v. New York City Health & Hosps. Corp., 688 F. Supp. 2d 317, 324 (S.D.N.Y. 2010)) ("Plaintiff has relied on these documents in making various accusations in this case and cannot, therefore, also challenge their authenticity."). Tammy is bound to the PSAs incorporated in her Amended Complaint, upon which she seeks relief. (See Doc. No. 24 ¶¶ 34–35, 61–63, 67, 69–71 (citing Doc. No. 19-1)).

Second, Tammy has failed to "show a genuine issue of material fact as to the validity of the agreement[s] to arbitrate." Great Earth Companies, Inc., 288 F.3d at 878. None of her arguments challenge the validity of the arbitration clauses. (See generally Doc. Nos. 61 and 63-1). To avoid arbitration, there must be a material dispute of fact concerning contract formation or whether the parties agreed to arbitrate. See Granite Rock Co., 561 U.S. at 296–97; Taylor, 955 F.3d at 576.

At best, Tammy asserts a "state-law contract defense[] . . . [of] forgery,"[3] Cooper, 367 F.3d at 498, over a fraction of the PSAs at issue.[4] She believes there are PSAs with "striking and readily observable variances with regard to how Jay Livingston's signature is signed," "traced versions" of Jay's signature, an "exact photocopy" of Jay's signature, and signatures that are "inconsistent with anything resembling Jay[]'s known signature." (Doc. No. 61 at 6). However, Tammy provides no evidence beyond her self-serving statement:

> I am very familiar with my grandfather's genuine signature and his handwriting. I have reviewed many of the copies of documents submitted as exhibits to Defendants' Renewed Motion to Dismiss. Based on my person (sic) knowledge of

---

[3] While Tammy does not expressly state that the PSAs are forged, the gravamen of her authenticity concerns rest in allegations of forgery of Jay's signature. See Ford v. Green Tree Servicing, LLC, No. CV 3:08-0857, 2008 WL 11510612, at *1 (M.D. Tenn. Oct. 20, 2008) ("The plaintiff directly raises none of the (sic) these contract defenses. However, to the extent that his arguments can be construed broadly as claims of duress, they ring hollow.").

[4] Tammy's allegations of forgery concern no more than approximately 25 songs, (see Doc. No. 61 at 6 n.4; Doc. No. 61-4 ¶ 15), a small fraction of the 800 songs at issue. (See Doc. No. 24 ¶ 38).

> my grandfather's signature and handwriting I do not believe many of the signatures on them which purport to be his are authentic.

(Doc. No. 61-4 ¶¶ 12–14). Besides broad generalities (i.e., living with Jay, helping him with his bills), no information is provided to explain her familiarity with Jay's signature, or the specific shortcomings with his signature. (See generally Doc. No. 61-4).

Her conclusory statements are unavailing. See Viet v. Le, 951 F.3d 818, 823 (6th Cir. 2020) (quoting Alexander v. CareSource, 576 F.3d 551, 559 (6th Cir. 2009)) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute . . . ."); see also Applegate v. Top Assocs., Inc., 425 F.2d 92, 96 (2d Cir. 1970) ("[I]t became [plaintiff]'s duty to reveal the factual basis of his claim. . . . He did not do so; instead, he noted his personal belief that the signature on [his wife]'s affidavit was a forgery and . . . an impersonat[ion]."). "A party should not be able to avoid the enforcement of an arbitration agreement that is otherwise valid by obliquely stating without any supporting proof that it is not a genuine signature." Yanez v. Dish Network, L.L.C., No. 1:20-CV-177, 2021 WL 4691909, at *7 (S.D. Tex. Apr. 23, 2021) (quotation marks omitted); see, e.g., Hammond v. Floor & Decor Outlets of Am., Inc., No. 3:19-CV-01099, 2020 WL 6459642, at *6 (M.D. Tenn. Nov. 3, 2020) (finding plaintiff's declaration that he did "not believe" he signed an arbitration agreement to be insufficient "to refute [defendant]'s electronic records establishing that [the plaintiff] did[.]"); Stephens v. Frisch's Big Boy Rests., No. 1:19-CV-954, 2020 WL 4754682, at *3 (S.D. Ohio July 30, 2020) ("Plaintiff's naked assertion that she did not sign the arbitration agreement, without more, is insufficient to raise a dispute of material fact regarding the validity of the arbitration agreement or whether she

8

electronically acknowledged the arbitration agreement.").  That Tammy does "not believe" Jay's PSA signatures are authentic fails to raise a material dispute of fact.[5]

Finally, her remaining challenges to the validity of the PSAs are "matter[s] to be resolved by the arbitrators, not the federal courts."  Glazer, 394 F.3d at 452.  She argues that the PSAs are inauthentic based upon "strikeouts of significant blocks of text," "interlineations that were not initialed," "mismatched 'Exhibits' and 'Schedules'," internally inconsistent dates, misplacement of signature blocks, an "irregular shadow over [a signature block]," "variances in . . . font and formatting," and "blurred out text."  (Doc. No. 61 at 5–8).  She then challenges Jay's authority to execute the assignments, (see Doc. No. 61 at 10–11), and criticizes the General Assignment's failure to specify which songs are bound by the arbitration clauses.  (Doc. No. 63-1 at 2–4).

Ultimately, she asks the Court to invalidate PSAs "as a whole," including their arbitration clauses, based on the invalidity of other provisions in the PSAs and the General Assignment.  (Doc. No. 61 at 5–11; Doc. No. 63-1 at 2–4).  This the Court cannot do.  Buckeye Check Cashing, Inc., 546 U.S. at 445–49 (reversing a ruling that invalidated an entire contract and its arbitration clause based on the invalidity of an interest provision and holding that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").  Tammy's challenges must be arbitrated.

---

[5] Even if Tammy were to meet these thresholds, she has presented no evidence of forgery under state law.  In Tennessee, when a contract is without a choice of law provision, the law of the state in which the contract was signed governs.  Williams v. Smith, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014).  While the parties dispute whether California or Tennessee law applies, (See Doc. No. 59 at 12; Doc. No. 61 at 8), critical to forgery in both states is establishing an "intent to defraud."  See Tennessee State Bank v. Mashek, 616 S.W.3d 777, 806 (Tenn. Ct. App. 2020); Wutzke v. Bill Reid Painting Serv., Inc., 151 Cal. App. 3d 36, 41 (Cal. Ct. App. 1984).  Tammy offers nothing to permit such an inference.

### b. All Claims are Subject to Arbitration

Without question, the language "[a]ny and all differences, disputes or controversies arising out of or in connection with this contract", (Doc. No. 19-1 at 12, 17), covers each of Tammy's claims. The Sixth Circuit has regularly required arbitration of nearly identical, "broadly worded" language. Watson Wyatt & Co, 513 F.3d at 649 (reversing the denial of a petition to compel arbitration of claims where an arbitration clause encompassed "any dispute or claim arising from or in connection with this agreement or the services provided"); see Cosgrove v. Shearson Lehman Bros., 105 F.3d 659 (6th Cir. 1997) (requiring arbitration of claims where the employment agreement's arbitration clause encompassed "any controversy arising out of or in connection with my compensation, employment or termination of employment"); Santos v. Am. Broad. Co., 866 F.2d 892, 893 (6th Cir. 1989) (requiring arbitration where a contract provided that "all disputes and controversies of every kind and nature arising out of or in connection with this contract shall be determined by arbitration"); accord Travel Consultants, Inc. v. Travel Mgmt. Corp., 367 F.2d 334, 338 (D.C. Cir. 1966) (finding "extremely broad" an arbitration provision including "any controversy or claim arising out of, or in connection with this Agreement or the breach thereof").

Tort claims are covered by arbitration clauses too when "the allegations underlying the claims 'touch matters' covered by the [agreement]." Fazio, 340 F.3d at 395 (quoting Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir.1987)). Each of Tammy's causes of action "aris[e] out of or in connection with" alleged: (1) failures to comply with JLM's accounting obligations under the PSAs (Counts I, II, III, IV, VII, VIII); (2) failures to adequately pay royalties required under the PSAs (Counts V, VI, VII, IX); and (3) alterations of copyright interests affecting the terms of the PSAs (Counts VIII, X, XI). (Doc. No. 24 at 80–145). Her claims fall within the purview of the arbitration clauses, and nothing within the PSAs suggest otherwise. (See, e.g., Doc. No. 19-1 at 12, 17). Accordingly, Tammy's tort claims are subject to arbitration. Watson Wyatt

& Co., 513 F.3d at 650 (quotation marks omitted) ("[B]roadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview. . . . [O]nly an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.").

## IV.     CONCLUSION

All of Tammy's claims are subject to arbitration clauses and warrant dismissal without prejudice.   See Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 975 (6th Cir. 2009); Anderson, 490 F. Supp. 3d at 1277.   Defendants' Renewed Motion to Dismiss (Doc. No. 58) will be granted, and this case will be dismissed without prejudice.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE